

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DIETGOAL INNOVATIONS LLC,

    Plaintiff,

v.                                                                 CIVIL ACTION NO. 2:13cv154

WEGMANS FOOD MARKETS, INC.,

    Defendant.

DIETGOAL INNOVATIONS LLC,

    Plaintiff,

v.                                                                 CIVIL ACTION NO. 2:13cv252

TIME, INC.,

    Defendant.

DIETGOAL INNOVATIONS LLC,

    Plaintiff,

v.                                                                 CIVIL ACTION NO. 2:13cv271

MEREDITH CORPORATION,

    Defendant.

DIETGOAL INNOVATIONS LLC,

    Plaintiff,

v.                                                                 CIVIL ACTION NO. 2:13cv390

HEARST COMMUNICATIONS, INC.,
d/b/a SEVENTEEN MAGAZINE,

                              Defendant.

**DIETGOAL INNOVATIONS LLC,**

                              **Plaintiff,**

                              v.                                                    **CIVIL ACTION NO. 2:13cv401**

**DUNKIN' BRANDS GROUP, INC.,**

                              Defendant.

**DIETGOAL INNOVATIONS LLC,**

                              **Plaintiff,**

                              v.                                                    **CIVIL ACTION NO. 2:13cv430**

**DOMINO'S PIZZA, INC.,**

                              Defendant.

**DIETGOAL INNOVATIONS LLC,**

                              **Plaintiff,**

                              v.                                                    **CIVIL ACTION NO. 2:13cv515**

**BRAVO MEDIA LLC,**

                              Defendant.

### *MEMORANDUM OPINION AND ORDER*

      Before the Court are Defendants Time, Inc. ("Time"), Meredith Corporation ("Meredith"), Hearst Communications, Inc. ("Hearst"), and Bravo Media LLC ("Bravo")'s Motions to Transfer to the Southern District of New York. All four motions are fully briefed and

ripe for disposition. For the reasons stated below, Time, Meredith, Hearst, and Bravo's Motions to Transfer are **GRANTED**, and it is **ORDERED** that these cases be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

Also before the Court are Defendant Wegmans Food Markets, Inc.'s ("Wegmans") Motion to Transfer to the Western District of New York, Defendant Dunkin' Brands Group, Inc.'s ("Dunkin'") Motion to Transfer to the District of Massachusetts, and Defendant Domino's Pizza, Inc.'s ("Domino's") Motion to Transfer to the Eastern District of Michigan. Those three motions are also fully briefed and ripe for disposition. For the reasons stated herein, Wegmans, Dunkin', and Domino's Motions to Transfer are **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff DietGoal Innovations LLC ("DietGoal") initially filed all of these cases in the United States District Court for Eastern District of Texas. DietGoal named Dunkin' and Wegmans as two of 26 defendants in a complaint filed on September 15, 2011, which DietGoal amended to add an additional seventeen defendants, including Hearst, on October 7, 2011, and amended for a second time to add seven more defendants, including Domino's, on November 3, 2011. A Magistrate Judge granted those defendants' motions to sever the claims against them into separate suits in August, 2012. DietGoal also filed individual complaints against Bravo, Meredith, and Time on June 13, 2012. All complaints alleged infringement of a single patent held by DietGoal. According to the Motion to Transfer that DietGoal recently filed with the United States Judicial Panel on Multidistrict Litigation, there are currently 24 pending suits

3

against 38 defendants in four different districts concerning the patent. ECF No. 1, MDL No. 2507.[1]

Time, Meredith, Hearst, and Bravo filed motions to change venue to the Southern District of New York, the same district that is the subject of the instant transfer motions. Wegmans also moved to transfer to the Southern District of New York (although it now requests transfer to the Western District of New York). Domino's and Dunkin' moved to transfer venue to the Eastern District of Michigan and the District of Massachusetts, respectively, the same districts to which they now seek transfer. Wegmans, Hearst, and Domino's filed their motions on January 13, 2012; Dunkin' filed its motion on August 7, 2012; Time filed its motion on August 8, 2012; Meredith filed its motion on September 14, 2012; and Bravo filed its motion on September 17, 2012. They sought transfer pursuant to 28 U.S.C. § 1404(a), which allows the transfer of a case to a more convenient venue: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." DietGoal opposed all of the motions, contending that the cases should remain in the Eastern District of Texas. None of the parties suggested the Eastern District of Virginia as a possible alternative forum.

On January 15, 2013, the cases were referred or assigned to the Magistrate Judge who eventually transferred them to the Eastern District of Virginia. On February 26, 2013, he ordered DietGoal "to file a supplemental brief of no more than 2 pages . . . that addresses whether this patent infringement action could have been brought in the Eastern District of Virginia" in each of the seven cases except for Wegmans. Defendants were also permitted to file responsive

---

[1] The parties in one case have reached a settlement, *DietGoal Innovations LLC v. Scripps Network, LLC d/b/a Food.com*, No. 1:13cv465. The other case, in which no motion to transfer is pending, is *DietGoal Innovations LLC v. Sweetgreen, Inc.*, No. 2:13cv400.

supplemental briefs. While all parties agreed in these supplemental briefings that personal jurisdiction was proper in the Eastern District of Virginia, all continued to maintain that the original districts they argued for were the most convenient venues. Nonetheless, the Magistrate Judge ordered all cases transferred to the Eastern District of Virginia: Wegmans on February 28, 2013, Time on March 25, 2013, Bravo on April 9, 2013, Meredith on April 15, 2013, Hearst on June 20, 2013, Dunkin' on July 2, 2013, and Domino's on July 10, 2013. He relied primarily on the inventor's location in Alexandria, Virginia, and the prosecuting attorney's location in Maryland.

None of the defendants filed objections to the Magistrate Judge's order pursuant to Federal Rule of Civil Procedure 72(a), which provides that for non-dispositive matters adjudicated by a magistrate judge, "[a] party may serve and file objections to the order within 14 days." But all of the defendants filed new motions to transfer venue after their cases were transferred to this district. Wegmans filed its motion on March 29, 2013; Time filed its motion on April 29, 2013; Bravo filed its motion on May 2, 2013; Meredith filed its motion on May 20, 2013; Dunkin' filed its motion on July 30, 2013; Hearst filed its motion on August 2, 2013; and Domino's filed its motion on August 20, 2013. DietGoal filed Oppositions to those motions on April 12, 2103, May 22, 2013, May 13, 2013, June 3, 2013, August 13, 2013, August 16, 2103, and September 3, 2013, respectively. The Defendants also filed Replies to DietGoal's Oppositions.

## II. DISCUSSION

### A. Standard of Review

DietGoal's primary arguments in opposition to the Defendant's motions do not concern the relative convenience of the venues suggested by the Defendants. Rather, DietGoal maintains that the motions to transfer to that district are barred by Rule 72(a) of the Federal Rules of Civil Procedure, because Defendants failed to timely object to the Magistrate Judge's Order, and by the law of the case doctrine, which discourages the re-opening of matters previously decided in the same case. The Court will address each argument in turn.

#### 1. Rule 72(a)

Rule 72(a) of the Federal Rules of Civil Procedure provides:

Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Under that Rule, a Magistrate Judge's ruling on a "nondispositive matter" must be objected to within fourteen days. Further, the district court must set it aside to the extent it is clearly erroneous. *See also* 28 U.S.C. §636(b)(1)(A) ("A [district] judge . . . may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). The United States Court of Appeals for the Fourth Circuit has yet to address whether venue transfer motions are considered "nondispositive," in which case they would be governed by the Rule just cited, or "dispositive," in which case they would be subject to a less deferential standard of review pursuant to Rule 72(b). *Bennett v. CSX Transp., Inc.*, 2010 WL 4646250, at *2 (D.S.C. Sept. 30, 2010). But none of the defendants here argue that a venue

6

transfer motion is dispositive, and the Court agrees with the district courts that routinely treat such motions as nondispositive. *E.g.*, *Hitachi Cable Am., Inc. v. Wines*, 1986 WL 2135 at *2 (D.N.J. Feb. 14, 1986) ("[A]n order transferring venue . . . affects only the forum for the action, rather than its disposition . . . .").

DietGoal contends that because Defendants did not object to the Magistrate Judge's transfer orders within fourteen days as required by Rule 72(a), their renewed transfer motions cannot be considered. Defendants respond that they should not be subject to the Rule at all because any objection would have been futile, and because the Magistrate Judge decided a different issue than the one currently presented—namely, the relative convenience of the Eastern District of Virginia rather than of the venues now proposed by the defendants. Neither argument is persuasive. Defendants cite no authority to support their argument that there is an unwritten exception to the requirement to object under Rule 72(a) when a party believes that it would be futile to do so. Even if there were such an exception, Defendants have not adequately explained why an objection to the Magistrate Judge's choice of venue would have been in vain. They also fail to point to any precedent supporting their contention that they were not required to object because the Magistrate Judge selected a venue that neither party had requested. Rule 72(a) simply requires parties to object to "matters" decided by the Magistrate Judge, and there is no apparent reason why the Rule should be read to exclude a matter raised and briefed by the parties but resolved in a different way than proposed by either party. In any event, the Magistrate Judge did consider the relative convenience of the venues proposed by the defendants, concluding that "the Eastern District of Virginia is a clearly more convenient venue that has superior connections to this case as compared to either venue proposed by the parties." *DietGoal Innovations LLC v. Meredith Corp.*, No. 2:12cv332, ECF No. 63 (E.D. Tex. Apr. 15, 2013).

Defendants' motions are replete with reasons why the Magistrate Judge decided the matter of venue incorrectly, and why he should have transferred the cases to the venue the parties originally requested (or, in the case of Wegmans, to the venue they now request). In other words, defendants ask the Court to re-address the same issue decided by the Magistrate Judge. Accordingly, the Court will construe the Defendants' motions as untimely objections to the Magistrate Judge's orders to transfer venue, and therefore subject to Rule 72(a). *See, e.g., J.C. Posey Estate ex rel. Posey v. Centennial Health Care Properties Corp.*, 78 F. Supp. 2d 554, 556 & n.6 (N.D. Miss. 1999).

Nonetheless, that Defendants' motions are in effect untimely objections does not mean that the matter is at an end. DietGoal is correct that the failure to timely object results in waiver, as the Rule provides that "[a] party may not assign as error a defect in the order not timely objected to." *See, e.g., Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 304 n. 8 (E.D. Va. 2004). *See also Farmer v. McBride*, 177 F. App'x 327, 331 (4th Cir. 2006). But that does not mean that the Court is without power to reconsider the issue and to set it aside to the extent it is clearly erroneous. Although district courts frequently decline to address matters that were not timely objected to, the Court is not aware of any authority holding that a district court is without power to address an untimely objection. To the contrary, the Seventh Circuit has concluded that "the district judge remains the final authority in the case, and he may reconsider *sua sponte* any matter determined by a magistrate judge. . . . Thus, although the district judge *must* make an independent determination of a magistrate judge's order upon objection, he is not *precluded* from reviewing a magistrate judge's order to which a party did not object." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760-61 (7th Cir. 2009). Similarly, the Tenth Circuit has observed that

"a party's failure to seek timely review does not strip a district court of its power to revisit the issue." *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006).

As the Advisory Committee Notes to Rule 72 observe, the governing statute fails to set forth any "specific procedures or timetables for raising objections to the magistrate's ruling on nondispositive matters." Waiver rules are designed to preserve judicial economy, to prevent a litigant from "sandbagging" the court, *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and to prevent unfair prejudice to the litigants. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). In light of those concerns, there is little reason to hold Defendants to their waiver where no action has been taken in the cases since their transfer to this district, and where DietGoal continues to litigate the issue of the proper forum for these suits before a Multidistrict Litigation Panel. Accordingly, the Court will review the Magistrate Judge's transfer orders under Rule 72(a)'s clear error standard. Under that deferential standard, the Court may not reverse "simply because it would have decided the case differently. Rather, a reviewing court must ask whether . . . it is left with the definite and firm conviction that a mistake has been committed." *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012) (quotation and punctuation omitted).

### 2. Law of the Case

Construing Defendants' motions as untimely objections to the Magistrate Judge's orders disposes of DietGoal's further contention that the law of the case doctrine precludes further review of the motions. That doctrine "restricts a court to legal decisions it has made on the same issues in the same case," *MacDonald v. Moose*, 710 F.3d 154, 161 n. 10 (4th Cir. 2013). When the doctrine applies, it must be followed in subsequent proceedings in the same case unless, among other exceptions, "the prior decision was clearly erroneous and would work manifest

9

injustice." *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988). It is "neither absolute nor inflexible; it is a rule of discretion rather than a jurisdictional requirement." *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 807-08 (E.D. Va. 2007).

But "the law of the case doctrine does not prevent a district judge from implicitly reconsidering a magistrate judge's earlier ruling in the same case." *Lettieri v. Equant Inc.*, 478 F.3d 640, 652 (4th Cir. 2007). *See also In re Air Crash at Belle Harbor, New York on November 12, 2001*, 2003 WL 124677 (S.D.N.Y. Jan. 15, 2003). If a magistrate judge's order became law of the case in district court, then the precedents discussed above providing for the district court's review of a magistrate's order—even one untimely objected to—would have little reason to exist or be applied. Therefore, although the Court is "mindful of the Supreme Court's dicta in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988)," *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 516 (4th Cir. 2003), that "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation," *Christianson*, 486 U.S. at 816, the Court declines to conclude that the Magistrate Judge's transfer orders constitute law of the case.

**B. Venue**

### 1. Motions to transfer to the Southern District of New York

The Magistrate Judge transferred the Meredith, Time, Bravo, and Hearst cases to this district under 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

As he noted, the parties do not dispute that the threshold requirement of a district where the case might have been brought is satisfied as to the Eastern District of Texas, the Eastern District of

Virginia, and the Southern District of New York. *DietGoal Innovations LLC v. Time, Inc.*, No. 2:12-cv-337, ECF No. 61, at 3 (E.D. Tex. March 25, 2013). Therefore, the sole question is whether it was clear error to find that transfer to the Eastern District of Virginia was warranted "[f]or the convenience of parties and witnesses" and "in the interest of justice." As "[t]he party seeking transfer," the Defendants "bea[r] the burden of proving that the circumstances of the case are *strongly* in favor of transfer." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (quotation omitted). A decision to transfer is one "committed to the sound discretion of the district court." *Id.*

The Court will first consider "the convenience of parties and witnesses," which courts often group under the heading of "private factors." As indicated by the plain language of the statute, one relevant factor is the convenience of the parties, and that factor weighs heavily in favor of the Southern District of New York. First, all of the parties reside there. Although DietGoal initially asserted in its complaints that it is a Texas LLC "based" in Texas, *e.g., DietGoal Innovations LLC v. Arby's Restaurant Group, Inc., et al.*, No. 2:11cv418, ECF No. 1, ¶ 1 (E.D. Tex. Sept. 15, 2011), it has since made clear that its principal place of business is in New York City. In a filing in another case concerning the same patent pending in the Eastern District of Texas, DietGoal asserted that "the undisputed fact is that DietGoal's operations are directed, controlled, and coordinated by [its two managing members] from their residences in New York City" and that "DietGoal's principal place of business is located in New York City." For that reason, it asserted that "any deposition of DietGoal should occur in New York City." *DietGoal Innovations LLC v. Tyson Foods, Inc.*, No. 2:12-cv-338, ECF No. 67 (E.D. Tex. Apr. 17, 2013).

All four defendants reside in the Southern District of New York as well. Time's principal place of business is in New York City, and its documents and witnesses are located there. Time

11

Mem. in Supp. of Mot. to Dismiss 11. Hearst's principal place of business is also in the Southern District of New York. Hearst Mem. in Supp. of Mot. to Dismiss. "Meredith's publishing and website business is based in the Southern District of New York, including the two managers with ultimate responsibility for the accused websites." Meredith Mem. in Supp. of Mot. to Dismiss 9. And Bravo's principal place of business is also in the Southern District of New York, where it "manages the operation, marketing, and financial performance" of the accused website. Bravo Mem. in Supp. of Mot. to Dismiss 8.

The location of the defendants is particularly relevant in these cases because in a patent infringement case, the preferred forum is frequently "the center of the accused activity." *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) (quotation omitted). *See also, e.g., Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007) ("In a patent infringement action, the preferred forum is that which is the center of gravity of the accused activity." (quotation omitted)); *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 628, 632 (W.D. Penn. 2006) (same); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 590 (D.N.J. 2001) ("The district court ought to be as close as possible to the area of the infringing device and the hub of activity centered around its production.").

That consideration is closely linked with another factor that weighs heavily in the analysis of the private factors: the convenience of the witnesses. *See In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009) ("The convenience of the witnesses is probably the single most important factor in a transfer analysis." (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (EDNY 2006)). Because the alleged infringers are all based in the Southern District of New York, most of the witnesses and documents likely to be relevant in a patent

infringement action are also located there. DietGoal accuses Time of infringing DietGoal's patent through the operation of a website with a "computerized meal planning interface." Time identifies several employees with technical, marketing, or financial information regarding that website, all of whom are based in New York City. Time also identifies a number of former employees who initially developed the accused website, who all work in New York City. Time Mem. in Supp. of Mot. to Dismiss. DietGoal similarly alleges that Meredith infringed its patent through an Internet computerized meal planning interface. Meredith asserts that "the two managers with ultimate responsibility for the accused websites" are based in the Southern District of New York. Other employee witnesses are in Vermont and Seattle, and at least two of them frequently travel to Meredith's New York office as part of their job responsibilities. Finally, most of the relevant documents are located in New York, Vermont, and Seattle. Meredith Mem. in Supp. of Mot. to Dismiss 9.

The analysis is much the same for the other two defendants. DietGoal's claim against Hearst centers on another computerized meal planning interface on one of its websites. Hearst states that "all . . . witnesses and documents relevant to the development, operation, marketing, and financial performance of the 'meal maker' tool (including a former employee [who contributed to the technological development of the tool] who is now a non-party witness are located in the Southern District of New York." Hearst Mem. in Supp. of Mot. to Dismiss 7. Finally, "all Bravo witnesses and documents relevant to the development, operation, marketing, and financial performance of the accused Bravo website at issue in the suit are located in the Southern District of New York." This includes the third party developer of the relevant website. Bravo Mem. in Supp. of Mot. to Dismiss 8-9.

Despite the presence of both parties and a substantial number of witnesses and documents pertaining to the alleged infringing websites in the Southern District of New York, the Magistrate Judge gave overwhelming weight in its transfer analysis to two of DietGoal's witnesses. Dr. Oliver Alabaster is the inventor of the asserted patent, and the founder and chief executive officer of the third party entity that practices the asserted patent, and he lives in Alexandria, Virginia, which is within the Eastern District of Virginia (although nearly 200 miles from Norfolk, Virginia). But the Magistrate Judge did not consider (at least explicitly) Dr. Alabaster's "agreement that New York courts would have exclusive jurisdiction over issues arising out [of] his patent license to DietGoal" and that Dr. Alabaster "consen[ted] to New York." Dietgoal Opp'n to Time Inc. Mot. to Transfer 10-11. While it is true that such an agreement does not necessarily mean that it would be more convenient for him to travel to New York City, his agreement to the venue for litigation against DietGoal does indicate that the Southern District of New York is not as inconvenient for him as it might initially seem based purely on his residence. The Magistrate Judge also gave weight to the residence of the patent prosecution attorney in Maryland, but he "does not have any documents to produce regarding this case," *id.*, although the Court acknowledges that any requirement to testify would likely be more convenient for him in the Eastern District of Virginia.

Two other convenience factors the Magistrate Judge considered merit brief mention. First, after transferring the initial case to this district, the Magistrate Judge then noted in later transfer orders that other DietGoal cases were pending in the district and none were pending in the Southern District of New York, presumably a factor that weighs in favor of judicial economy and DietGoal's convenience. (This consideration is also often considered a "public factor." *See* Charles A. Wright & Arthur R. Miller, *et al.*, 15 Fed. Prac. & Proc. Juris. § 3854 (3d ed.).) But

14

four defendants have asked for transfer to the Southern District of New York, so if the Court grants their transfer motions, there would be multiple cases pending there. Further, as noted above, there are already multiple DietGoal cases pending in several different districts. Second, the Magistrate Judge gave no independent weight to the plaintiff's choice of forum, a factor that courts have "held in varying degrees of esteem." Charles A. Wright & Arthur R. Miller, *et al.*, 15 Fed. Prac. & Proc. Juris. § 3848 (3d ed.). Even if the Court were to accord DietGoal's choice of the Eastern District of Texas some weight, it is the only factor so far that weighs in favor of that venue—and DietGoal does not here request transfer back to that district.

The statute also requires consideration of "the interest of justice," which courts often term "the public factors." It "encompasses public interest factors aimed at systemic integrity and fairness," such as "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Jaffé v. LSI Corp.*, 874 F. Supp. 2d 499, 505 (E.D. Va. 2012) (quotations omitted). The only factor that the Magistrate Judge considered weighty in that analysis was the interest in having local controversies decided at home. In the Bravo and Time cases, the Magistrate Judge found that this factor weighed in favor of both the Eastern District of Virginia and the Southern District of New York, in light of the inventor's presence in Virginia but DietGoal's and the defendants' presence in New York. Inexplicably, in the Meredith and Hearst cases, he focused exclusively on "a strong localized interest" in the case in the Eastern District of Virginia as the situs of the inventive activity and practicing entity, and concluded that the factor weighed only in favor of the Eastern District of Virginia. The Court disagrees that the presence of the inventor in the Eastern District of Virginia is a sufficiently strong localized interest to warrant transfer of the Meredith and Hearst cases to this district.

15

Instead, the Court agrees with the Magistrate Judge's order in the Bravo and Time cases, and finds that the interest in localized controversies weighs in favor of both the Eastern District of Virginia and the Southern District of New York.

The only other interest of justice factor for which the parties present evidence is docket congestion, a factor the Magistrate Judge did not consider. DietGoal attached an exhibit showing that the time from filing to disposition in civil cases is significantly longer in the Southern District of New York than in the Eastern District of Virginia. *E.g.*, DietGoal Opp. to Meredith Mot. to Transfer, Ex. E. While the Court finds that this factor does weigh in favor of the Eastern District of Virginia, it gives the factor less weight than the considerations previously discussed. *See Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) (discussing the court's legitimate concern with "being swamped with patent infringement cases" given its reputation as the "rocket docket").

In sum, although the inventor of the asserted patent does appear to be the most important of DietGoal's witnesses, it was clear error to find that that consideration alone, especially in light of his consent to litigation in New York, outweighs the presence of DietGoal, the Defendants, and almost all of the Defendants' witnesses in the Southern District of New York. For that reason, Time, Meredith, Bravo, and Hearst's Motions to Transfer are **GRANTED** and it is **ORDERED** that these cases be transferred to the Southern District of New York.

### 2. Motions to Transfer to the Western District of New York, the District of Massachusetts, and the Eastern District of Michigan

In the Eastern District of Texas, Wegmans sought transfer to the Southern District of New York, Dunkin' requested transfer to the District of Massachusetts, and Domino's moved to transfer to the Eastern District of Michigan. Dunkin' and Domino's now seek transfer to those

same districts, but Wegmans seeks transfer to a new district, the Western District of New York. Because Wegmans seeks transfer to a different district than it originally argued for transfer to before the Magistrate Judge, the Court finds that Wegmans has waived its ability to object to the Magistrate Judge's decision on the basis that the case should have been transferred to the Western District of New York. Nonetheless, because the Court ultimately concludes that all motions should be denied, the Court will still address the merits of Wegmans current transfer motion.

As with the motions to transfer to the Southern District of New York, there is no dispute that the cases could have been brought in the districts where the defendants now seek transfer. The sole question concerns the relative convenience of the districts for witnesses and parties and the "interest of justice" under § 1404(a). Unlike the motions to transfer to the Southern District of New York, where the convenience of the parties weighed overwhelmingly in favor of one district, here the defendants and DietGoal reside in different districts. While DietGoal's principal place of business is, by its own admission, in the Southern District of New York, Dunkin' is headquartered in Massachusetts, Domino's resides in Ann Arbor, Michigan, and Wegmans is headquartered in Rochester, New York. The convenience of the parties therefore weighs in favor of both the Defendants' home districts and the Southern District of New York.

As to the convenience of the witnesses, DietGoal's most relevant witness lives in Alexandria, Virginia, but, as discussed above, he "consented to the jurisdiction of New York County courts in connection with any dispute regarding his sale of his patent to DietGoal." DietGoal Opp. to Wegmans Mot. to Transfer, at 11. DietGoal's other witnesses, who seem likely to have little relevant information, reside in New York City and Maryland. *E.g., DietGoal Innovations LLC v. Domino's Pizza, Inc.*, No. 2:12cv561, ECF No. 55 (E.D. Tex. July 10, 2013).

Dunkin's "employees involved in the design, development, operation and maintenance of the accused system" are located in Massachusetts. *DietGoal Innovations LLC v. Dunkin' Brands Group, Inc.*, No. 2:12cv566, ECF No. 50, at 3-4 (E.D. Tex. July 2, 2013). Domino's "employees involved in the design, development, operation, and maintenance of the accused systems are located in Ann Arbor, [Michigan]." *DietGoal Innovations LLC v. Domino's Pizza, Inc.*, No. 2:12cv561, ECF No. 55, at 3 (E.D. Tex. July 10, 2013). Finally, the employees responsible for Wegmans' accused website are located in Rochester, New York, as is the studio hired to build the website. *DietGoal Innovations LLC v. Wegmans Food Markets, Inc.*, No. 2:12cv562, ECF No. 43 (E.D. Tex. Feb. 28, 2013). The convenience of the witnesses is therefore split between the Defendants' home districts and the Eastern District of Virginia.

Finally, as with the other motions to transfer, Plaintiff's initial choice of venue was the Eastern District of Texas, the only factor that weighs in favor of that venue. As to the consideration of splitting multiple similar cases across different districts, this factor weighs slightly in favor of keeping the cases in the Eastern District of Virginia. The defendant in one of the DietGoal cases in this district has not filed a motion to transfer, *see* n. 1, *supra*, and if these three motions to transfer were granted, each would be the only such case in its respective district.

The Court will turn finally to the interest of justice factor. As to the interest in deciding local disputes at home and not overburdening local juries with cases to which they have little connection, the Court finds that this factor is split between Defendants' home districts, DietGoal's principal place of business in the Southern District of New York, and the situs of the inventive activity in the Eastern District of Virginia. DietGoal presents no court congestion information as to the Western District of New York, but it has shown that the District of Massachusetts and the Eastern District of Michigan have a somewhat lengthier filing to

disposition and filing to trial time frame in civil cases than the Eastern District of Virginia. DietGoal Opp. to Dunkin' Mot. to Transfer, Ex. C; DietGoal Opp. to Domino's Mot. to Transfer, Ex. B. This consideration therefore points to keeping those two cases in the Eastern District of Virginia, although the Court gives this factor little weight for the reasons discussed above.

Were this Court to confront these motions *de novo*, it might very well be inclined to conclude that transfer is appropriate in light of the concentration in Defendants' home districts of witnesses pertaining to the infringement. But the relevant considerations as a whole do not so strongly point towards transfer as to render the Magistrate Judge's Order clearly erroneous. For that reasons, Defendant Wegmans, Domino's, and Dunkin's Motions to Transfer are **DENIED**.

### III. CONCLUSION

Because the Magistrate Judge's orders to transfer the Hearst, Meredith, Time, and Bravo cases to the Eastern District of Virginia was clear error, those Defendants' Motions to Transfer are **GRANTED**, and it is **ORDERED** that the cases are transferred to the Southern District of New York. The Clerk shall transfer those case files to the Clerk for the Southern District of New York. Defendants Dunkin', Domino's, and Wegmans' Motions to Transfer are **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 19, 2013

Raymond A. Jackson
United States District Judge